Manfred Muecke, CA State Bar No. 222893
mmuecke@manfredapc.com
**MANFRED, APC**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 550-4005
Facsimile: (619) 550-4006

*Additional Attorneys Listed on Signature Page*

Attorneys for Plaintiff Philip Johnson,
and the putative class

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP JOHNSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY INSURANCE GROUP, USAA GENERAL INDEMNITY COMPANY, and GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1 through 20, inclusive,<br><br>Defendants. | **Case No.:** '22CV518 TWR JLB<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**(1) Breach of Contract**<br><br>**(2) Unjust Enrichment**<br><br>**(3) Violation of California Business and Professions Code § 17200** *et seq.* |

1

## CLASS ACTION COMPLAINT

2 Plaintiff Philip Johnson ("Plaintiff Johnson" or "Plaintiff"), by and through

3 his attorneys and on behalf of himself and all others similarly situated, hereby

4 submit this Class Action Complaint against Defendants United Services Auto

5 Association, USAA Casualty Insurance Group, USAA General Indemnity

6 Company, and Garrison Property and Casualty Insurance Company Group

7 (collectively, "USAA" or "Defendants"), and allege as follows:

8

## PRELIMINARY STATEMENT

9 1. This case is filed to end USAA's practice of unfairly profiting from

10 the global COVID-19 pandemic.

11 2. Beginning in March 2020, states across the country, including

12 California, began to enforce strict social distancing measures to slow the spread

13 of COVID-19. This included closing schools and businesses and instituting strict

14 "stay-at-home" orders that prevented most individuals from leaving their homes

15 for extended periods of time.

16 3. While many companies, industries, and individuals have suffered

17 financially as a result of the COVID-19 pandemic, auto insurers like USAA have

18 scored a windfall. Not surprisingly, as a result of state-wide social distancing and

19 stay-at-home measures, there has been a dramatic reduction in driving, and an

20 attendant reduction in driving-related accidents. This decrease in driving and

21 accidents has significantly reduced the number of claims that auto insurers like

22 USAA have paid, resulting in a drastic and unfair increase in USAA's profits at

23 the expense of its customers.

24 4. One published report calculates, very conservatively, that at least a

25 30% average refund of paid premiums would be required to make up for the

26 excess amounts paid by consumers for just the period between mid-March and the

27 end of April of 2020.

28

5.     Despite full knowledge of these facts, USAA continued to charge and collect excessive premiums throughout 2020 and 2021 and has failed to issue adequate refunds. USAA's dividend and premium credit program was inadequate to compensate its customers for overpayments resulting from COVID-19. The program applied only a 20% dividend to policyholders spanning three months starting in March 2020. And although USAA reports that it offered an additional dividend and smaller premium credits later in 2020 and 2021, these amounts were still insufficient.

6.     To remedy Defendants' unlawful conduct, Plaintiff bring this class action alleging violations of California state law. Plaintiff seeks disgorgement of the ill-gotten gains obtained by USAA to the detriment of its customers, all available damages, punitive damages, declaratory and injunctive relief, and all other available relief.

## JURISDICTION

7.     This Court has jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy is over $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a State different from Defendants.

## VENUE

8.     Venue is proper in the Southern District of California under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

9.     Defendant United Services Auto Association is a Texas corporation with a principal place of business in San Antonio, Texas. Defendant sells personal automobile insurance in states around the country, including California. Defendant issued auto insurance policies during the relevant time period at issue.

10.     Defendant USAA Casualty Insurance Company is a Texas

corporation with a principal place of business in San Antonio, Texas. Defendant sells personal automobile insurance in states around the country, including California. Defendant issued auto insurance policies during the relevant time period at issue.

11.    Defendant USAA General Indemnity Company is a Texas corporation with a principal place of business in San Antonio, Texas. Defendant sells personal automobile insurance in states around the country, including California. Defendant issued auto insurance policies during the relevant time period at issue.

12.    Defendant Garrison Property and Casualty Company is a Texas corporation with a principal place of business in San Antonio, Texas. Defendant sells personal automobile insurance in states around the country, including California. Defendant issued auto insurance policies during the relevant time period at issue. Defendant Garrison Property and Casualty Company is a subsidiary of United Stated Automobile Association.

13.    Defendants collectively market insurance and present themselves as USAA and virtually all of the insurance operations of these companies are performed by the same USAA entity, named United Services Automobile Association or "USAA" as abbreviated.[1]

14.    Defendants issued personal auto, motorcycle, and/or RV insurance policies to Plaintiff and the members of the putative class during the relevant time period. Defendants are affiliated companies, jointly participated in, and are jointly responsible for the unlawful conduct described herein.

---

[1] *See Management Discussion and Analysis* in 2020 Annual Financial Statements at https://interactive.web.insurance.ca.gov/companyprofile/companyprofile?event=companyProfile&doFunction=getCompanyProfile&eid=3288 (*last accessed* April 11, 2022)

CLASS ACTION COMPLAINT

15.     In April 2020, USAA announced it would be returning a portion of premiums in the form of statement credits.[2] These statement credits and return of a portion of premiums in the form of dividends were uniformly developed by USAA and was applied in identical fashion by each of the Defendants. Indeed, Defendants submitted a joint memorandum to the California Department of Insurance explaining the uniform terms and application of the USAA premium credits and dividends.[3] Defendants have each applied the USAA policy premium credit and dividend program and the unfair practices at issue to California policyholders during the relevant time period.[4]

16.     Plaintiff Johnson is an adult resident of Bonita, California. Plaintiff has held personal auto insurance policies purchased from United Services Auto Association during the time period relevant to this lawsuit. As described in more detail herein, as a result of the global COVID-19 pandemic and corresponding drop in automobile use and traffic, the credit given by United Services Auto Association is wholly inadequate to compensate Plaintiff for his overpayments on these policies.

/

/

---

[2] https://communities.usaa.com/t5/Press-Releases/USAA-to-Return-520-Million-to-Members/ba-p/228150 (*last accessed* April 11, 2022)
[3] *See* "CA COVID-19 Premium Refund Report Submissions - Company U to Z," California Department of Insurance, at "USAA - Group# 200 - Bulletin 2020-3 Resubmission," www.insurance.ca.gov/0250-insurers/0300-insurers/0100-applications/rsb-forms/2020/2020-3-submissions/loader.cfm?csModule=security/getfile&amp;pageid=315821  (*last accessed* April 11, 2022).
[4] *See id.* at worksheet for United States Automobile Association – NAIC #25941, USAA Casualty Insurance Company – NAIC #25968, USAA General Indemnity Company – NAIC #18600, and Garrison Property and Casualty Insurance – NAIC #21253

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.     The Global COVID-19 Pandemic and State-Mandated Social Distancing Measures**

17.     In late December 2019, a novel coronavirus known as SARS-CoV-2 began to spread around the globe. The virus causes a disease called COVID-19. By mid-January, cases of COVID-19 were confirmed in the United States.

18.     By mid-March, there were thousands of confirmed cases of COVID-19 across the United States and hundreds in the State of California alone.

19.     Like many states around the country, California responded to the worsening COVID-19 crisis with measures designed to increase, and often mandate, social distancing in order to slow the spread of the virus.

20.     On March 4, 2020, Governor Gavin Newsom proclaimed a State of Emergency in California as a result of COVID-19. In the following weeks, the state rolled out a series of social distancing measures, including, for example, recommendations that older adults and those with elevated risk should self-isolate.

21.     On March 19, 2020, Governor Newsom instituted a statewide stay-at-home order,[5] making California among the first states to establish such an order. With some exceptions, the order mandated "all individuals living in the State of California to stay home."[6]

22.     In the time since Governor Newsom first instituted the stay-at-home order, California's progress toward reopening has been halting, and additional stay-at-home orders were imposed in response to the spread of COVID cases.

---

[5] Executive Order N-33-20 (Mar. 19, 2020), https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf (*last accessed* April 11, 2022)
[6] *Id.* ¶ 1.

CLASS ACTION COMPLAINT

**B.     USAA Has Obtained a Windfall Due to the Dramatic Decrease in Automobile Use and Traffic Caused by COVID-19**

23.     Although businesses across the United States have almost uniformly suffered as a result of COVID-19, state-wide stay-at-home orders, and other social distancing measures, the auto insurance industry has benefited. In fact, auto insurance—a $250 billion industry— has secured a windfall from COVID-19-related restrictions. The reason is simple. As one report put it: "With shelter-in-place restrictions and business closings, most people stopped driving or reduced their driving dramatically. With fewer cars on the road, there were dramatically fewer accidents. Fewer motor vehicle accidents mean fewer auto insurance claims."[7]

24.     Beginning in mid-March of 2020, the number of miles driven by individuals dropped dramatically because of COVID-19. This includes the State of California. Through the use of cell phone location data, it has been reported that vehicle miles traveled in California dropped significantly from their January 2020 average in March and April of 2020:[8]

| Date Range | Decrease in Miles Traveled |
|---|---|
| March 15 - March 21 | -53% |
| March 22 - March 28 | -72% |
| March 29 - April 4 | -74% |
| April 5 - April 11 | -77% |
| April 12 - April 18 | -74% |
| April 19 - April 25 | -71% |

[7] *See* Center for Economic Justice & Consumer Federation of America, Personal Auto Insurance Premium Relief in the COVID-19 Era at 5 (May 7, 2020) ("CEJ/CFA Report"), https://consumerfed.org/wp-content/uploads/2020/05/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf (*last accessed* April 11, 2022)
[8] *See id.* at 6-8.

Upon information and belief, decreases in pre-COVID miles traveled continued through the end of 2020 and well into 2021.[9]

26. Automobile accidents have also decreased. According to the Road Ecology Center at the University of California, Davis, traffic collisions, including those involving injuries or fatalities, dropped by roughly half after California instituted its stay-at-home order.[10]

26. This dramatic decrease in driving and auto accidents allowed auto insurance companies, including USAA, to unfairly profit at the expense of their customers during the COVID-19 pandemic. Auto insurance rates, including those set by USAA, are intended to cover the claims and expenses that they expect to occur in the future, extrapolated from historical data. Thus, as explained in the joint report by the Center for Economic Justice and the Consumer Federation of America:

> Because of COVID-19 restrictions, the assumptions about future claims underlying insurers' rates in effect on March 1 became radically incorrect overnight. When roads emptied, the frequency of motor vehicle accidents and insurance claims dropped dramatically and immediately. The assumptions in insurers' rates covering timeframes from mid-March forward about future frequency of claims became significantly wrong when the roads emptied because of Stay-At-Home orders and business closures starting in mid-March. The then-current rates became excessive not just for new policyholders going forward, but also for existing policyholders whose premium was based on now-overstated expectation about insurance claims.[11]

---

[9] See id. at 2; see also Center for Economic Justice & Consumer Federation of America, Auto Insurance Refunds Needed as New Data Show Crashes Remain Well Below Normal Due to Pandemic (Dec. 22, 2020), https://consumerfed.org/press_release/auto-insurance-refunds-needed-as-new-data-show-crashes-remain-well-below-normal-due-to-pandemic-23-fewer-accidents-in-september-and-october/ (last accessed April 11, 2022)
[10] Fraser Shilling and David Waetjen, Special Report: Impact of COVID19 Mitigation on Numbers and Costs of California Traffic Crashes, Road Ecology Center, UC Davis, Apr. 1, 2020 (updated April 15, 2020), https://roadecology.ucdavis.edu/sites/g/files/dgvnsk8611/files/files/COVID_CHIPs_Impacts_report2.pdf (last accessed April 11, 2020)
[11] CEJ/CFA Report, supra, at 4.

27. The excessive premiums collected and not refunded by USAA during the COVID-19 pandemic have led to a substantial windfall.

**C.    USAA Has Failed to Give Adequate Refunds to Plaintiff and Other Policyholders in California**

28. According to conservative calculations by the Center for Economic Justice and the Consumer Federation of America based on motor vehicle accident data, at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to auto insurance companies, including USAA, just for the time period from mid-March through the end of April 2020.[12]

29. At all relevant times, USAA has been aware of the need to refund premiums in order to correct the unfair windfall it gained from policyholders in California as a result of the COVID-19 crisis. USAA has likewise been aware of its excessive profits. Despite this, USAA has failed to adequately return these profits to its customers.

30. In spring 2020, USAA announced its plans to issue dividends to its auto insurance policyholders. Under the program, USAA provided a dividend representing approximately a 20% premium credit to personal auto insurance customers for three months' worth of premiums.[13]

31. Following the issuance of its dividends, USAA subsequently issued premium credits in the amount of 20% of one month's premium for policyholders who were issued a policy in April or May 2020. USAA also issued a second premium credit amounting to 10% of one month's premium for policyholders

---

[12] CEJ/CFA Report, *supra*, at 12-13.
[13] USAA's pandemic-related dividend was extended because, per an August 2020, statement attributed to USAA President and CEO Wayne Peacock on USAA's website, "We see that members are driving less than when the pandemic hit. As these patterns unfold, we are adjusting our auto insurance rates." *See* "USAA to Return an Additional $270 Million to Members, Totaling Over $1 Billion in Dividends," (August 2020), https://communities.usaa.com/t5/Press-Releases/USAA-to-Return-an-Additional-270-Million-to-Members-Totaling-ba-p/235292 (*last accessed* April 11, 2022).

who had a policy in effect in August of 2020. The company reports that it subsequently provided additional, but even smaller refunds to California customers in 2020 and 2021 ranging between 5% and 3% of monthly premiums.

32.     But USAA's dividend and premium credit program has been inadequate to compensate its customers for the unfair windfall that the company has obtained as a result of COVID-19. The credits were nowhere near the minimum 30% average refund benchmark that has been conservatively estimated as an adequate refund for just the first the first two months of the pandemic alone.

33.     Plaintiff Johnson has been a customer of USAA at all relevant times. Plaintiff is a current United Services Auto Association policyholder.

34.     Under USAA's publicly announced dividends and premium credits issued, Plaintiff received dividends and/or premium credits in 2020 and 2021. These dividends and premium credits were inadequate to compensate Plaintiff for the unfair windfall that the company has obtained as a result of COVID-19.

35.     Under its insurance policies, including the policies of Plaintiff and the members of the putative class, USAA has the discretion to make voluntary downward premium adjustments based on an insured's changed circumstances.

36.     USAA improperly exercised that discretion by failing to issue refunds of the now-excessive premiums during changed circumstances, when it should have instead used its discretion, in good faith, to make appropriate adjustments.

37.     Plaintiff's policies described above were in effect during the time period in which most of the United States, including California, was significantly impacted by the global COVID-19 pandemic and stay-at-home orders (along with other measures and conditions) caused a widespread and dramatic decrease in automobile use and traffic. Despite this, USAA gave Plaintiff inadequate dividends and premium credits on their 2020 and 2021 premiums.

38.     USAA was aware that the shelter-in-place orders, social distancing guidelines, and resulting reduction in driving resulted in premiums that were not based on an accurate assessment of risk. Yet USAA continued to collect and retain excessive, unfair premiums from Plaintiff and others.

39.     In 1988, California voters approved Proposition 103 to further establish the public policy of the state and to "protect consumers from arbitrary insurance . . . practices, to encourage a competitive insurance marketplace . . . and to ensure that insurance is fair, available, and affordable to all Californians." The people of the state declared with Proposition 103 that "[t]his law shall be liberally construed and applied in order to fully promote its underlying purposes . . . ."

40.     USAA's collection and/or retention of such excessive premiums violates California public policy and contravenes Proposition 103's mandate to protect consumers from arbitrary insurance practices, to encourage a competitive insurance marketplace, and to ensure that insurance is fair, available, and affordable for all Californians.

41.     Upon information and belief, thousands of other policyholders in California have been injured by USAA's policy and practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic.

42.     Plaintiff and the members of the putative class were unable to reasonably avoid these harms because the analysis required to determine premium refunds was within the exclusive knowledge of USAA.

## CLASS ACTION ALLEGATIONS

43.     Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings this action individually and on behalf of all similarly situated individuals.

44.     The proposed class is defined as follows:
All California residents who purchased personal automobile insurance from USAA covering any portion of the time period from March 1, 2020 to the present.

10

45.     The members of the class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, there are thousands of individuals in the class. The identities of the class members can be determined from USAA's records.

46.     There are questions of law and fact common to the class that predominate over questions solely affecting individual members.

47.     The common questions of law and fact include, but are not limited to:

a.  Whether USAA has a common policy or practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic;

b.  Whether USAA's refund program is inadequate;

c.  Whether USAA violated the covenant of good faith and fair dealing;

d.  Whether USAA was unjustly enriched as a result of its failure to provide adequate refunds to its customers;

e.  Whether USAA's failure to provide adequate refunds to its customers is unfair;

f.  Whether USAA has violated California consumer protection laws through its failure to provide adequate refunds to its customers and its failure to disclose the inadequacy of its refunds; and

g.  the proper measure and calculation of damages.

48.     The questions of law and fact listed above will yield common answers for Plaintiff and the class as to whether USAA is liable for the alleged legal violations.

1   49.   Plaintiff's claims are typical of those of the members of the class.
2   Plaintiff, like other class members, was subject to the unlawful practices
3   described herein.

4   50.   Plaintiff will fairly and adequately protect the interests of the class
5   and has retained counsel experienced in complex class action litigation.

6   51.   Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because
7   USAA has acted on grounds that apply generally to the class, so that final
8   injunctive relief or corresponding declaratory relief is appropriate with respect to
9   the class.

10   52.   This action is properly maintainable as a class action under Fed. R.
11   Civ. P. 23(b)(3) because questions of law or fact predominate over any questions
12   affecting individual class members. A class action is superior to other methods in
13   order to ensure a fair and efficient adjudication of this controversy because, in the
14   context of similar litigation, individual Plaintiff often lack the financial resources
15   to vigorously prosecute separate lawsuits in federal court against large corporate
16   defendants. Class litigation is also superior because it will preclude the need for
17   unduly duplicative litigation resulting in inconsistent judgments pertaining to
18   USAA's policies and practices. There will be no difficulties in managing this
19   action.

20   53.   In the alternative, class treatment is appropriate under Fed. R. Civ. P.
21   23(c)(4) because this is a case in which class adjudication of particular issues
22   would serve the interests of judicial economy.

23   ## CAUSES OF ACTION

24   ## COUNT I

25   **Breach of Contract –**

26   **Violation of the Covenant of Good Faith and Fair Dealing**

27   **(On Behalf of Plaintiff and the Putative Class)**

28

54.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

55.     Plaintiff and the members of the putative class purchased insurance contracts from USAA and performed their contractual obligations thereunder.

56.     USAA owed Plaintiff and the members of the putative class a duty of good faith and fair dealing by virtue of their contractual relationship.

57.     Under the insurance contracts, USAA had the discretion to make voluntary downward premium adjustments based on an insured's changed circumstances

58.     Plaintiff and the members of the putative class had a reasonable expectation that USAA would exercise this discretion fairly and in good faith, without depriving Plaintiff and the members of the putative class of their right to have the premiums collected for their insurance coverage limited to no more than a fair rate of return, and to have that rate adjusted if it became excessive.

59.     USAA's failure to return sufficient premiums has disappointed the legitimate expectations of Plaintiff and the members of the putative class of having premiums collected for their insurance coverage that are limited to no more than a fair rate of return, and to have that rate adjusted if it became excessive.

60.     USAA's conduct has thereby deprived Plaintiff and the members of the putative class of one of the key benefits of their contracts, and constitutes a willful violation of the obligation of good faith and fair dealing owed for the purpose of unfairly maximizing revenue from premiums paid by Plaintiff and members of the putative class.

61.     In addition, USAA gave more weight to its own interests than to the interests of its policyholders. This conduct violated the higher standard of good faith and fair dealing to which insurers are held due to the special relationship existing between insurer and insured, which is characterized by elements of

13

public interest, adhesion, and fiduciary responsibility.

62.    USAA consciously and deliberately acted with a lack of good faith, despite knowing that its conduct violated the orders of the Department of Insurance, thereby disappointing the reasonable expectations of Plaintiff and the members of the putative class that premiums collected for their insurance coverage would be limited to no more than a fair rate of return, and would be adjusted if they became excessive.

63.    Plaintiff and the members of the putative class have been injured as a direct and proximate result of USAA's unlawful conduct.

## COUNT II

### Unjust Enrichment/Quasi-Contract

### (On Behalf of Plaintiff and the Putative Class)

64.    Plaintiff pleads this Count in the alternative to her other Counts herein.

65.    As a result of USAA's failure to provide adequate refunds to its customers as described herein, USAA has been unjustly enriched.

66.    USAA was enriched under such circumstances that it cannot conscientiously retain its gain at Plaintiff's and the putative class's expense.

67.    Plaintiff and the members of the putative class have been injured as a direct and proximate result of USAA's unlawful conduct.

## COUNT III

### Violation the California Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code § 17200 *et seq.*

### (On Behalf of Plaintiff and the Putative Class)

68.    Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

69.    Plaintiff and USAA are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

14

70.     The UCL defines unfair competition to include any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

71.     By committing the acts and practices alleged herein, USAA has engaged in unfair business acts and practices in violation of the UCL.

72.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims. USAA has violated the UCL's proscription against unfair business practices by, among other things: failing to fully refund premiums with full knowledge of the amount and extent of their excess and the fact that they are not based on an accurate assessment of risk, and failing to disclose the fact that it is earning excessive profits, or the amount of those profits.

73.     There is no societal benefit from USAA's conduct—only harm to consumers. USAA has engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, and the gravity of its conduct outweighs any alleged benefits attributable to such conduct.

74.     California has a longstanding public policy limiting an insurer's ability to impose rates in excess of a fair rate of return on the insured risk that is reflected in various statutes and regulations.

75.     USAA's conduct in collecting and retaining premiums that have become excessive in light of the unforeseen pandemic-related reduction in driving violates this vital public policy and the intent of the statutes and regulations designed to ensure that the rates collected by insurers relate to the risk insured and are limited to a fair rate of return.

76.     There were reasonably available alternatives to further USAA's legitimate business interests, other than the conduct described herein.

77.    The injury caused by USAA's failure to provide adequate refunds is substantial in light of very conservative calculations that a 30% minimum average premium refund would be required to correct its unfair windfall just for the time period from mid-March through the end of April 2020.

78.    Plaintiff and the members of the putative class have been injured as a direct and proximate result of USAA's conduct in violation of the UCL. Plaintiff and the members of the putative class lost money or property and suffered injury in fact because USAA collected and retained, and continues to collect and retain, premiums in excess of the limitations imposed by California public policy, which rightfully belong to Plaintiff and the putative class.

79.    Plaintiff and the members of the putative class were unable to reasonably avoid these harms because the analysis required to determine premium refunds was within the exclusive knowledge of USAA.

80.    Plaintiff therefore request that this Court grant the relief enumerated below. Otherwise, Plaintiff and the members of the putative class may be irreparably harmed and/or denied an effective and complete remedy.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the putative class, prays for relief as follows:

A.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B.    The appointment of Plaintiff as class representative and his counsel as class counsel;

C.    A declaration that the practices complained of herein are unlawful and violate the laws of California alleged herein;

D.    An injunction against Defendants from engaging in the unlawful practices complained of herein;

E.      Awarding Plaintiff and the members of the putative class their
        damages in an amount to be determined at trial, including
        compensatory damages, consequential damages, punitive damages,
        and any other damages provided under relevant laws;

F.      Disgorgement of, restitution of, and/or imposing a constructive trust
        upon, the ill-gotten gains derived by Defendants from its unjust
        enrichment;

G.      An order awarding Plaintiff and the class attorneys' fees, costs, and
        expert costs;

H.      An order awarding Plaintiff and the members of the putative class
        pre-judgment and post-judgment interest, as allowed by law; and

I.      Such further relief as may be appropriate.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 14, 2022              By:     *s/Manfred P. Muecke*

                                           Manfred Muecke (CA SBN: 222893)
                                           mmuecke@manfredapc.com
                                           **MANFRED, APC**
                                           600 West Broadway, Suite 700
                                           San Diego, CA 92101
                                           Telephone: (619) 550-4005
                                           Facsimile: (619) 550-4006

                                           Matthew H. Morgan*
                                           morgan@nka.com
                                           Robert L. Schug (CA SBN: 249640)
                                           schug@nka.com
                                           Chloe A. Raimey
                                           craimey@nka.com
                                           **NICHOLS KASTER, PLLP**
                                           4700 IDS Center
                                           80 S. 8th Street
                                           Minneapolis, MN, 55402

17

Telephone: (612) 256-3200
Facsimile: (612) 338-4878

Ryan F. Stephan*
rstephan@stephanzouras.com
James B. Zouras*
jzouras@stephanzouras.com
Teresa M. Becvar*
tbecvar@stephanzouras.com
Paige L. Smith*
psmith@stephanzouras.com
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: (312) 233-1550
Facsimile: (312) 233-1560

David A. Neiman*
dneiman@rblaw.net
**ROMANUCCI & BLANDIN LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
Telephone: (312) 458-1000
Facsimile: (312) 458-1004

Asaf Agazanof, Esq.
Asaf@Lawasaf.com
**ASAF LAW APC**
2330 Westwood Blvd., Second Floor
Los Angeles, CA  90064
Tel: (424) 254-8870
Fax: (888) 254-0651

George Thomas Martin, III,
tom@mblawapc.com
Nicholas J Bontrager
nick@mblawapc.com
**MARTIN AND BONTRAGER APC**
4605 Lankershim Boulevard, Suite 535
Toluca Lake, CA 91602
Tel: 323-940-1700
Fax: 323-328-8095

*Pro hac vice application forthcoming*

18

Attorneys for Plaintiff Philip Johnson, and the putative class.